## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| MEGAN ANVENDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No.: |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| BOARD OF EDUCATION, | ) | |
| FOX C-6 SCHOOL DISTRICT, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

### NATURE OF THE ACTION

1. Federal law protects persons, including public school teachers, who advocate for the rights of persons with disabilities, including children with disabilities.  Plaintiff Megan Anvender ("Plaintiff") was a Special Education teacher whose advocacy on behalf of students with disabilities in the Fox C-6 School District resulted in the loss of her employment.  Plaintiff ("Plaintiff) brings an action against her former employer, Defendant Board of Education, Fox C-6 School District ("Fox") for retaliation in violation of Title II and Title V of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, *et seq.*; and section 504 of the Rehabilitation Act (the "Rehabilitation Act") 29 U.S.C. §§ 794, *et seq.*  Fox retaliated against Plaintiff by not renewing her teaching contract for the 2020-2021 school year after Plaintiff opposed Fox's unlawful practices and/or practices that Plaintiff reasonably believed to be unlawful regarding Fox students with disabilities and their educational rights.  Plaintiff also brings a claim against Fox for violating her First Amendment rights pursuant to 42 U.S.C. § 1983.

1

## JURISDICTION

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 in that this action arises under laws of the United States.

3. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 in that the events or omissions giving rise to this action occurred in Jefferson County, Missouri, which is within the Eastern District.

## PARTIES

4. Plaintiff is a female citizen and a resident of St. Louis County, Missouri.

5. Plaintiff is a certified Special Education teacher in the State of Missouri.

6. Fox is a body politic pursuant to Missouri statutory law with authority vested in it by the State Board of Education and the Missouri Department of Education to oversee and administer the public education for children attending grade schools and high schools in the Fox C-6 District which is located in Jefferson County, Missouri.

7. At all relevant times herein, Fox received and continues to receive federal funding.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

8. Fox employed Plaintiff as a Special Education teacher from 2015 through the end of the 2020 school year.

9. During her employment with Fox, Plaintiff performed her duties as a Special Education teacher in a satisfactory or more than satisfactory manner.

10. Plaintiff began working as a Special Education teacher at Fox High School in or about August 2015.  Towards the end of the 2015-2016 school year, Fox renewed Plaintiff's teaching contract but reassigned her to work as a Special Education teacher at one of Fox's elementary schools.

11. Plaintiff began working as a Special Education teacher at the elementary school in or about August 2016. Towards the end of the 2016-2017 school year, Plaintiff asked to be reassigned to Fox's Ridgewood Middle School ("Ridgewood") for the 2017-2018 school year. Fox granted Plaintiff's request and renewed her contract for the 2017-2018 school year.

12. Plaintiff began working as a Special Education teacher at Ridgewood in or about August 2017. She was assigned to work in a self-contained classroom with students with behavioral and/or learning disabilities. Plaintiff reported to the Principal of Ridgewood.

13. Plaintiff's students at Ridgewood received special educational services as part of Individualized Education Plans ("IEPs"). IEPs are written statements that set out each special education student's present educational performance, objectives for improvement, and specially designed instruction and services.

14. Students who qualify for special educational services under the Individuals with Disabilities in Education Act ("IDEA") are required to have IEPs and school districts are required to implement those IEPs. Missouri implemented the IDEA through its Missouri State Plan.

15. Pursuant to the IDEA and/or the Missouri State Plan, students with disabilities at Fox are guaranteed a free and public education in the least restrictive environment. *See* 42 U.S.C. §§ 1400, *et seq.*

16. All of the students in Plaintiff's classroom(s) at Ridgewood had IEPs and received services through those IEPs as part of the IDEA and/or the Missouri State Plan.

17. The students' disabilities significantly impacted one or more of their major life activities, including but not necessarily limited to the life activities of learning and communicating.

3

18. Towards the end of the 2017-2018 school year, Fox renewed Plaintiff's contract as a
    Special Education teacher at Ridgewood for the 2018-2019 school year.

19. Fox placed a new female student with severe autism and limited communication abilities
    (hereinafter referred to as "Student Doe") in Plaintiff's classroom in or about August
    2018.  This was Student Doe's first year at Ridgewood. Prior to attending Ridgewood,
    the student received private placement educational services from Great Circle which is a
    comprehensive service provider of behavioral health services in St. Louis County,
    Missouri.

20. Towards the end of the 2018-2019 school year, Fox renewed Plaintiff's contract as a
    Special Education teacher at Ridgewood for the 2019-2020 school year.

21. Dr. Patrick Schwalbe ("Dr. Schwalbe") became the new Principal of Ridgewood after the
    2018-2019 school year and just prior to the beginning of the 2019-2020 school year.
    Plaintiff began reporting to Dr. Schwalbe at the or around the beginning of the 2019-2020
    school year.

22. In or about October 2019, Student Doe exhibited behaviors that impeded her ability to
    participate in the least restrictive learning environment in accordance with her IEP.
    During this time, Student Doe began having recurrent crisis situations which required
    Plaintiff to leave the classroom with her in order to care for Student Doe when she was in
    crisis.  Student Doe's crisis situations included screaming, wetting herself, and refusing
    to participate in classroom activities.  Plaintiff's other nine students were frequently left
    under the care of a paraprofessional while Plaintiff tended to Student Doe during her
    times of crisis.

23. In or about October 2019, Student Doe was considered in crisis for 19 hours over the course of seven school days.

24. On or about November 4, 2019, Plaintiff emailed Fox Director of Special Services Stacey Dockery ("Dockery") about her concern that other students in her classroom might not be receiving their required IEP minutes because Plaintiff was required to be out of the classroom so often with Student Doe.  Plaintiff wrote to Dockery that there might an "IEP compliance issue."  Plaintiff also expressed concern to Dockery over how Student Doe's increased behaviors and the related disruptions may be affecting the other students.

25. In or about November 2019, Student Doe was considered in crisis for 17 hours over the course of six school days.  Student Doe's behaviors during this period included screaming, hitting, dropping to the floor, and property destruction.

26. On or about November 14, 2019, Plaintiff met with Dockery and Fox Behavioral Specialist Samantha Muhelenbeck ("Muhelenbeck") regarding her concerns about Student Doe.

27. On December 3, 2019, Dockery asked Plaintiff to provide her with a report by December 13, 2019, detailing the percentage of time that Plaintiff was required to be away from the classroom while supporting Student Doe.

28. On or about December 5, 2019, Muhelenbeck observed Student Doe in Plaintiff's classroom.  However, Muhelenbeck failed to provide Plaintiff with any specific recommendations on how to address Student Doe's crisis behaviors.

29. In or about December 2019, Student Doe was considered in crisis for 22 hours over the course of four school days.

30. On or about December 9, 2019, the father of a male student in Plaintiff's classroom contacted Plaintiff regarding Student Doe's behavior and its impact on his son's education.  Plaintiff encouraged the father to contact Fox and/or Ridgewood's administrators to discuss his concerns.

31. Upon information and belief, the male student's father and/or other students' parents did contact Fox and/or Ridgewood administrators (including Dr. Schwalbe) regarding their concerns over Student Doe's behaviors and/or the related impact of those behaviors on their children and their children's education.

32. On December 10, 2019, upon information and belief, Dr. Schwalbe, Dockery, and Muhelenbeck met to discuss Student Doe and/or concerns relating to Student Doe but they did not invite Plaintiff to attend.

33. On December 13, 2019, Plaintiff provided Dr. Schwalbe, Dockery, and Muhelenbeck with the report that Dockery requested in which she detailed the amount of time that she was required to spend out of the classroom that first semester due to Student Doe's behaviors.

34. Just prior to the winter holiday break, Dr. Schwalbe instructed Plaintiff to implement some new procedures and/or routines in dealing with Student Doe's behaviors.  Dr. Schwalbe and/or other administrators created the procedures and/or routines without first obtaining and/or without relying upon input from Plaintiff on what Plaintiff believed might be the best option(s) for Student Doe.  When Plaintiff expressed her concern to Dr. Schwalbe about the proposed changes, he instructed her to use her professional judgment.

35. At the beginning of the second semester, Plaintiff attempted to implement some of the proposed procedures and/or routines that Dr. Schwalbe suggested in late December 2019.

However, the new procedures and/or routines were not having the desired effect. In January 2020, Student Doe was in crisis for 20 hours over the course of 5 school days. Her behaviors included spitting, screaming, refusal to participate, hitting, pushing, wetting herself, dropping to the floor, cursing, and property destruction.

36. On January 29, 2020, Plaintiff wrote a letter to Fox Superintendent Dr. Nisha Patel ("Dr. Patel") regarding Student Doe. In the letter, Plaintiff identified the concerns about IEP compliance that she previously raised with Dockery.

37. In February 2020, Student Doe was in crisis for 20 hours over the course of 7 school days.

38. On February 11, 2020, a male student in Plaintiff's class told Plaintiff that he was scared of Student Doe and afraid that she was going to hurt him.

39. On February 13, 2020, Plaintiff met with Dr. Patel. Fox Special Education Contact Dr. Tammy Cardona, Dockery, and a representative from the National Education Association were also present. During the meeting, Plaintiff addressed issues relating to Student Doe including her concerns about the negative impact that Student Doe's behaviors were having on the rest of her class. Plaintiff expressed concern that those other students may not be receiving their required IEP minutes since Plaintiff was required to be out of the classroom so often with Student Doe. Plaintiff proposed several ideas including the idea of assigning a specific behavioral specialist to Student Doe. Plaintiff also expressed her opinion that Ridgewood may not be the proper placement for Student Doe and that she might be better served in a private placement setting such as Great Circle.

40. On February 19, 2020, Plaintiff participated in an IEP meeting with the parents of a new student who might be joining her classroom during the 2020-2021 school year. Plaintiff

excused herself from the meeting when she heard Student Doe screaming next door. Before Plaintiff left the meeting, the parents of the new student asked Plaintiff about students in her class with disruptive behaviors.  Plaintiff replied that she did have a student who exhibited disruptive behaviors.  Plaintiff further replied that there was a plan in place to separate the other students from the disruptive student and advised the parents to speak with Dr. Schwalbe regarding any concerns.

41. One day after the IEP meeting, on February 20, 2020, Dr. Schwalbe met with Plaintiff to discuss her meeting with Dr. Patel.  Plaintiff told Dr. Schwalbe that the purpose of her meeting with Dr. Patel was to advocate for her students.  Dr. Schwalbe dismissed Plaintiff's proposed solutions and told her that they were for an "ideal world."

42. On February 25, 2020, the mother of another male student in Plaintiff's classroom emailed Plaintiff about her son's increased anxiety and fear of going to school.  The mother specifically identified Student Doe and/or Student Doe's behaviors as the reason why her son did not want to come to school.  Plaintiff responded to the mother via email and forwarded a copy of the email to Dr. Schwalbe.

43. On February 27, 2020, the mother of third male student in Plaintiff's classroom emailed Plaintiff about how her son was negatively impacted by Student Doe's disruptive behaviors.  Plaintiff responded to the mother via email and forwarded a copy of the email to Dr. Schwalbe.

44. On February 28, 2020, Dr. Schwalbe told Plaintiff that her teaching contract would not be renewed for the upcoming 2020-2021 school year.

45. Plaintiff was caught of guard by the non-renewal decision.

46. Dr. Schwalbe gave Plaintiff the option of resigning at the end of the 2019-2020 school year in lieu of being nonrenewed.

47. On or about February 28, 2020, Dr. Schwalbe recommended to Fox's Board of Education that it vote not to renew Plaintiff's teaching contract for the 2020-2021 school year.

48. On March 2, 2020, Plaintiff notified Dr. Schwalbe that she would not resign.

49. On March 3, 2020, Fox's Board of Education voted not to renew Plaintiff's teaching contract for the 2020-2021 school year.

50. During the 2019-2020 school year, Plaintiff was away from her classroom for a total of 98 hours because of Student Doe's behaviors.

51. On March 4, 2020, Fox Assistant Superintendent Dr. Kelly Bracht ("Dr. Bracht") notified Plaintiff of the Board of Education's non-renewal vote.

52. Dr. Bracht also notified Plaintiff on March 4, 2020, in a letter that Plaintiff's employment with Fox would conclude at the end of the current school year.  Plaintiff reasonably believed that her employment with Fox would at the end of the school year (if not before) after receiving Dr. Bracht's letter.

53. Regardless, Plaintiff appealed the Board of Education's non-renewal vote by filing a grievance.

54. On or about April 22, 2020, Plaintiff also filed a child complaint against Fox with the Missouri Department of Secondary and Elementary Education ("DESE").

55. In Plaintiff's complaint to DESE, Plaintiff alleged that Fox violated state and federal regulations implementing the IDEA by failing to provide a free and appropriate education in the least restrictive environment to Student Doe which in turn negatively impacted

Plaintiff's ability to provide a free and appropriate education to the other nine students with disabilities in Plaintiff's classroom.

56. DESE conducted an investigation into Plaintiff's complaint.

57. DESE concluded that Fox was out of compliance for failing to provide Student Doe with a free and appropriate education in the least restrictive environment.  DESE required Fox to provide the Office of Special Education Compliance Section with an assurance statement that it would provide Student Doe with a free and appropriate education in the least restrictive environment.

58. DESE also required Fox to convene Student Doe's IEP team to determine the amount of compensatory services owed and develop a plan to provide those services for its failure to provide Student Doe with a free and appropriate education in the least restrictive environment.

59. On June 16, 2020, the Board of Education denied Plaintiff's grievance and voted to uphold its earlier non-renewal vote.

## COUNT I – UNLAWFUL RETALIATION IN VIOLATION OF THE REHABILITATION ACT

60. Plaintiff incorporates by reference paragraphs 1 through 59 as if fully set forth herein.

61. At all relevant times herein, Plaintiff advocated on issues related to the federal and/or state education rights of students with disabilities.  Such advocacy is protected activity under the Rehabilitation Act.

62. At all relevant times herein, Fox knew that Plaintiff was involved in the aforementioned protected activity.

63. Fox took adverse employment actions against Plaintiff by not renewing her contract for the 2020-2021 school year and by denying her grievance.

64. Plaintiff's protected activity was causally connected to the adverse employment actions taken by Fox against Plaintiff.

65. Fox's actions and/or decisions regarding Plaintiff's employment constitute a violation of the Rehabilitation Act.

66. As a direct and proximate cause of Fox's actions and decisions, Plaintiff sustained and will continue to suffer lost wages and benefits of employment.

67. As a direct and proximate result of Fox's actions and decisions, Plaintiff sustained and will continue to incur attorneys' fees and costs of litigation.

68. As a direct and proximate result of Fox's actions and decisions, Plaintiff sustained emotional distress and mental anguish as well as harm to her professional reputation.

**WHEREFORE**, Plaintiff prays that this Court, after trial by jury, find for Plaintiff and against Fox, and enter judgment for Plaintiff for her lost wages, benefits of employment, and prejudgment interest thereupon; for Plaintiff's emotional distress, mental anguish and harm to reputation; for Plaintiff's attorneys' fees and costs of litigation; for reinstatement or, in the alternative, front pay; and for any such other relief that this Court deems just and proper.

### COUNT II – UNLAWFUL RETALIATION IN VIOLATION TITLES II AND V OF THE ADA

69. Plaintiff incorporates paragraphs 1 through 68 as if fully set forth herein.

70. At all relevant times herein, Fox was a public entity as that term is defined under Title II of the ADA.

71. At all relevant times herein, Plaintiff advocated on issues related to the federal and/or state education rights of students with disabilities.  Such advocacy is protected activity under the ADA.

72. At all relevant times herein, Fox knew that Plaintiff was involved in the aforementioned protected activity.

73. Fox took adverse employment actions against Plaintiff by not renewing her contract for the 2020-2021 school year and by denying her grievance.

74. Plaintiff's protected activity was causally connected to the adverse employment actions taken by Fox against Plaintiff.

75. Fox's actions and/or decisions concerning Plaintiff's employment constitute a violation of the ADA.

76. As a direct and proximate result of Fox's actions and decisions, Plaintiff sustained and will continue to sustain lost wages and benefits of employment.

77. As a direct and proximate result of Fox's actions and decisions, Plaintiff sustained and will continue to incur attorneys' fees and costs of litigation.

78. As a direct and proximate result of Fox's actions and decisions, Plaintiff sustained emotional distress and mental anguish as well as harm to her professional reputation.

**WHEREFORE,** Plaintiff prays that this Court, after trial by jury, find for Plaintiff and against Fox, and enter judgment for Plaintiff for her lost wages, benefits of employment, and prejudgment interest thereupon; for Plaintiff's emotional distress, mental anguish, and harm to reputation; for Plaintiff's attorneys' fees and costs of litigation; for reinstatement or, in the alternative, for front pay; and for any such other relief that this Court deems just and proper.

**COUNT III – UNLAWFUL RETALIATION IN VIOLATION OF 42 U.S.C. § 1983**

79. Plaintiff incorporates by reference paragraphs 1 through 78 as if fully set forth herein.

80. At all relevant times herein, Plaintiff advocated on issues related to the federal and/or state education rights of students with disabilities (and/or their families). Such advocacy was constitutionally protected activity.

81. The educational rights of students with disabilities (and/or their families) in the Fox C-6 School District is also matter of public concern.

82. Fox took adverse employment actions against Plaintiff by not renewing her contract for the 2020-2021 school year and by denying her grievance.

83. Plaintiff's constitutionally protected activity was a substantial or motivating factor in the adverse employment actions taken by Fox against Plaintiff.

84. Fox's actions and decisions violated Plaintiff's First Amendment rights under the United States Constitution and Section 1983.

85. As a result of Fox's conduct and actions, Plaintiff suffered, and will continue to suffer, lost wages and other benefits of employment.

86. As a result of Fox's conduct and actions, Plaintiff suffered emotional distress and mental anguish as well has harm to reputation.

87. As a result of Fox's conduct and actions, Plaintiff incurred and will continue to incur attorney's fees and litigation costs.

**WHEREFORE**, Plaintiff prays that this Court, after trial by jury, find for Plaintiff and against Fox, and enter judgment for Plaintiff for her lost wages, benefits of employment, and prejudgment interest thereupon; for Plaintiff's emotional distress and mental anguish; for Plaintiff's attorneys' fees and costs of litigation; for punitive damages; for reinstatement or, in the alternative, for front pay; and for any such other relief that this Court deems just and proper.

DOBSON, BERNS & RICH, LLP


By: /s/ Jerome J. Dobson
          Jerome J. Dobson, #32099
          jdobson@dbrstl.com
          Amanda D. Anthony, #57834
          manthony@dbrstl.com
          5017 Washington Place, Suite 300
          St. Louis, MO 63108
          (314) 621-8363 *phone*
          (314) 621-8366 *fax*

Attorneys for Plaintiff